# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

LOUISE FRASER HOLDER, )
)
    Plaintiff/Appellant, ) Shelby Probate No. B-25859
)
v. ) Appeal No. W1998-00890-COA-R3-CV
)
FIRST TENNESSEE BANK N.A. )
MEMPHIS, as Trustee of the Richard )
Dudley Holder Revocable Trust, )
RICHARD FRASER HOLDER, )
EUGENE MICHAEL HOLDER, )
TRUDY HOLDER STAMPS, and )
SUZANNE HOLDER GARZA, )
)
    Defendants/Appellees. )

**FILED**

**March 31, 2000**

Cecil Crowson, Jr.
Appellate Court Clerk

### APPEAL FROM THE PROBATE COURT OF SHELBY COUNTY
### AT MEMPHIS, TENNESSEE

### THE HONORABLE ROBERT S. BENHAM, JUDGE

For the Plaintiff/Appellant:                For the Defendants/Appellees:
_____            (No appellate brief filed)
Steven H. McCleskey                         First Tennessee Bank N.A. Memphis, Pro Se
Charles Wesley Fowler                       Richard Fraser Holder, Pro Se
Memphis, Tennessee                          Eugene Michael Holder, Pro Se
                                            Trudy Holder Stamps, Pro Se
                                            Suzanne Holder Garza, Pro Se

**REVERSED AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R.. FARMER, J.

# OPINION

This is an action in probate court for declaratory judgment regarding a trust. The probate court construed the trust instrument to require the trustee to retain the stocks placed in the trust. We reverse, holding that the trust instrument permits the sale of stock for purposes of diversification and reinvestment under these circumstances, and that it also permits the trustee to reinvest the proceeds rather than distributing the proceeds to the beneficiary.

On June 11, 1997, Plaintiff/Appellant, Louise Fraser Holder ("Holder"), filed a complaint for declaratory judgment seeking construction of provisions of the Richard Dudley Holder Revocable Trust ("Trust"). The Trust was executed on January 4, 1977, by Holder's late husband, Richard Holder ("Grantor"). Holder is the sole current income beneficiary of the Trust. The Grantor's children, Richard Fraser Holder, Eugene Michael Holder, Trudy Holder Stamps and Suzanne Holder Garza ("Children"), are remainder beneficiaries under the Trust. First Tennessee Bank, N.A., Memphis, Tennessee ("Trustee"), serves as Trustee of the Trust. The Children, along with First Tennessee Bank, are Defendants/Appellees in this case.

The terms of the Trust allow the Trustee to make a sale of stock placed in the Trust for a "compelling reason" if it is in the best interests of the beneficiaries. The Trust includes the following provisions:

<u>Powers, Duties, Privileges and</u>
<u>Immunities of the Trustee</u>

Subject to the provisions otherwise contained herein, the said Trustee shall have the power to do everything it deems advisable with respect to the administration of the various trusts created hereunder . . . .
<u>Concerning the Trustee</u>
* * *
(d)      In managing, investing and controlling the trust, the Trustee shall exercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion, and intelligence exercise in the management of their own affairs . . . .
* * *
<u>Investment Management</u>
Only for the most compelling reason is the Trustee to make any change in the stocks put in this trust. However, change is to be permitted if the need for change appears to the Trustee to be clearly in the best interests of the beneficiaries of this trust. . . .
The Grantor intends for the Trustee to act primarily in a custodial capacity with regard to the stocks in this trust, and he expressly relieves the Trustee of responsibility for any unfavorable results that may arise from lack of diversification, or from these restrictions on its normal investment freedom.

However, the "Distribution of Funds" section of the Trust requires the Trustee to distribute to the income beneficiaries the net proceeds derived from the sale of stock:

> (a) During the term of this trust, the following funds shall be distributed at monthly intervals less a reasonable reserve for necessary expenses and taxes incurred in the administration of this trust:
>
> * * *
>
> (3) The net proceeds derived from the occasional sale by the Trustee of the number of shares eligible to be sold at that time.

Thus, the Trust authorizes the Trustee to sell stock in the corpus of the Trust under some circumstances, and the "Distribution of Funds" section addresses the distribution of proceeds from the sale of stock.

The corpus of the Trust consisted primarily of Coca-Cola Company common stock. On December 2, 1997, the Trustee sold 5,200 shares of Coca-Cola stock for a net sales price of $337,625 in order to diversify the Trust's investment portfolio by reinvesting the proceeds from the sale in other stocks. All of the parties in this case stipulate that the Trustee sold the stock purely for diversification and risk management purposes and not with the intention of distributing the sale proceeds to Holder as current income beneficiary. However, the Trustee expressed concern that the "Distribution of Funds" section of the Trust, quoted above, could be interpreted to require distribution of the proceeds of this sale to Holder as the Trust's current income beneficiary. The Trustee sought construction of the Trust's provisions before implementing the plan to diversify.

On June 11, 1998, Holder filed a complaint for declaratory judgment seeking construction of the Trust provisions. At the hearing on the matter before the Shelby County Probate Court, Ross Campbell ("Campbell"), an employee of First Tennessee Bank who serves as Trustee for the Trust, was the only witness to testify.

Campbell testified that he interpreted the "Investment Management" section of the Trust to expressly permit the Trustee to diversify the Trust assets if the Trustee determines that diversification is "clearly in the best interests of the beneficiaries." Campbell stated that maintaining the majority of the Trust's corpus in one stock poses an "undue risk" to the corpus as well as to the beneficiaries. Consequently, Campbell felt that diversification of the Trust assets for purposes of risk management was clearly in the best interests of the beneficiaries.

Campbell also testified about construction of the "Distribution of Funds" section of the Trust. Campbell stated that, in his opinion, the "Distribution of Funds" section of the Trust should apply

2

only to sales conducted for the express purpose of funding distributions and not to sales for the purpose of reinvestment, diversification or risk management. Campbell testified that requiring distribution of the proceeds of the stock sale to Holder would be contrary to Holder's wishes and would have "serious negative estate tax consequences" to Holder and the other beneficiaries.

In a memorandum decision filed on November 4, 1998, the probate court found that, "considering the language of the Trust as a whole," the Grantor intended the Trustee to retain the assets placed in the Trust. The probate court emphasized provisions in the Trust describing the Trustee's role as "custodial" and specifically exonerating the Trustee from liability for any unfavorable result arising from lack of diversification. The probate court found that no compelling reason had been offered mandating the sale of stock. The probate court concluded that, absent a clear showing of detrimental change, the stock in the Trust should be retained. From this decision, Holder now appeals.

On appeal, Holder argues that the probate court failed to recognize that the Trustee is expressly permitted to diversify the Trust's investments and sell stock in the Trust corpus where, as here, the Trustee determines that diversification is "clearly in the best interest of the beneficiaries." Assuming the trust instrument permits the sale of stock conducted by the Trustee, Holder argues that the Trust provisions on the distribution of proceeds from the sale of stock do not require distribution to the beneficiary under these circumstances.

The interpretation of a trust instrument is a question of law for the court. *See Estate of Burchfiel v. First United Methodist Church of Sevierville*, 933 S.W.2d 481, 483 (Tenn. Ct. App. 1996); and *see Marks v. Southern Trust Co.*, 310 S.W.2d 435, 437-438 (Tenn. 1958) (stating that trust instruments are interpreted as are contracts, deeds or wills). Questions of law are reviewed *de novo* on the record with no presumption of correctness. *See Estate of Burchfiel*, 933 S.W.2d at 483.

A trust instrument is interpreted according to the same rules applied to contracts, deeds, or wills. *See Marks*, 310 S.W.2d at 437-438. The trust must be interpreted so as not to frustrate the intent of the grantor. *See Henshaw v. Flenniken*, 191 S.W.2d 541, 546 (Tenn. 1945). Though one clause may contradict or be inconsistent with another clause within the trust, the court must adhere to and give effect to the intention of the grantor to determine which clause will prevail. *See Marks*, 310 S.W.2d at 438. The grantor's intention is to be ascertained from the particular words used, from

3

the context and from the general scope and purpose of the instrument. *See Daugherty v. Daugherty*, 784 S.W.2d 650, 653 (Tenn. 1990).

Under Tennessee Code Annotated § 35-3-117(b), a fiduciary or trustee investing, reinvesting, purchasing, acquiring, exchanging, selling or managing property:

> . . . shall act not in regard to speculation but with the care, skill, prudence and diligence under the circumstances then prevailing, specifically including, but not by way of limitation, the general economic conditions, the anticipated tax consequences of an investment, the anticipated duration of the trust, and the anticipated needs of the trust and its beneficiaries, that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims to attain the goals of the trustor as determined from the governing instrument.

*Id.* (1996). The statute also requires a fiduciary to consider individual investments as part of an overall investment strategy. *Id.* Section 35-3-117(c) states that a fiduciary may retain property received into a trust at its inception "as long as the fiduciary, in the exercise of good faith and reasonable prudence, discretion and intelligence, may consider that retention is in the best interest of the trust and its beneficiaries. . . . " *Id.*

In this case, the Grantor intended to limit the Trustee's affirmative duty to diversify the investments in the Trust, indicating that the Trustee was to act primarily in a "custodial capacity" and specifically exonerating the Trustee for any unfavorable results arising from lack of diversification. Nevertheless, the Trust also permits the Trustee to do "everything it deems advisable with respect to the administration" of the Trust. The "Investment Management" section of the Trust permits the Trustee to change the Trust for a "compelling" reason, "if the need for change appears to the Trustee to be clearly in the best interests of the beneficiaries of the trust."

Campbell testified that, in his opinion as Trustee, maintaining the majority of the Trust's corpus in one stock represented an "undue risk" to the corpus and the beneficiaries. Therefore, Campbell felt that diversification of the Trust assets by sale of stock was in the best interest of the beneficiaries. The probate court found this reason was not sufficiently "compelling" to warrant sale of stock in the corpus of the Trust, given the language in the Trust instrument that changes in stocks put in the Trust were to be made "[o]nly for the most compelling reason . . . ." However, this language in the Trust is modified by language specifically permitting a change in the stocks in the Trust "if the need for change appears to the Trustee to be clearly in the best interests of the beneficiaries" of the Trust. No evidence was proffered at the hearing that contradicted the Trustee's

opinion that the sale of the stock was "clearly" in the best interests of the beneficiaries. Moreover, the sale of stock is consistent with the Trustee's statutory duty under Tennessee Code Annotated § 35-3-117(b). Under these circumstances, considering the Trust instrument as a whole and the intent and purpose of the instrument, we find that the sale of stock conducted by the Trustee was permitted under the Trust. Consequently, the decision of the probate court that the stock in the Trust should be retained is reversed.

Holder argues that the "Distribution of Funds" section of the Trust does not require the Trustee to disburse to the beneficiaries proceeds from the sale of stocks sold for the purposes of diversification, reinvestment, and risk management. Since the probate court held that the stocks should be retained in the Trust, this issue was not addressed by the probate court.

The "Distribution of Funds" section of the Trust requires the Trustee to distribute to the income beneficiaries the net proceeds of an occasional sale of stock. The Trustee testified that this provision of the Trust instrument should require the distribution of proceeds only for sales conducted for the purpose of funding distributions and not for sales conducted for the purpose of reinvestment, diversification or risk management. The Trustee testified that requiring distribution of the proceeds to Holder would have "serious negative estate tax consequences" to Holder and the other beneficiaries.

If the "Distribution of Funds" section of the Trust instrument were construed to require the distribution of proceeds from all sales of stock, this would nullify the provisions of the "Investment Management" section. As noted above, the "Investment Management" section expressly authorizes the Trustee to make a "change in the stocks … in this trust" if such a change appears "clearly" in the best interests of the beneficiaries. Such a change could never be made if distribution were required for sales made for purpose of diversification or reinvestment. This interpretation would frustrate the Grantor's intent by preventing the Trustee from making a needed change. Therefore, we hold that the proceeds from the sale of stock in this case, conducted for diversification purposes, may be reinvested by the Trustee in order to diversify trust investments. This construction is consonant with the overall language and purpose of the Trust.

In sum, we reverse the decision of the probate court, holding that the stock in the Trust should be retained. We find that the Trustee's decision to sell the stock is permitted by the terms of the Trust and by the statutory standard required of fiduciaries. We also hold that terms of the Trust

5

permit the Trustee to reinvest the proceeds of this sale of stock rather than distributing the proceeds to the income beneficiary.

The decision of the trial court is reversed and remanded. Costs are taxed to Defendant/Appellee, First Tennessee Bank N.A. Memphis, for which execution may issue if necessary.

_____HOLLY KIRBY LILLARD, J.

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W. S.**

_____
**DAVID R. FARMER, J.**

6